**CORRECTED**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1874V
UNPUBLISHED

| | |
|---|---|
| BRIA BARRY,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: June 23, 2023<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA,* for Petitioner.

*Rachelle Bishop, U.S. Department of Justice, Washington, DC,* for Respondent.

## DECISION AWARDING DAMAGES[1]

On December 16, 2020, Bria Barry filed a petition[2] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from the administration of an influenza (flu) vaccine on October 26, 2018. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Although Respondent conceded entitlement, the parties could not agree to damages, and so the matter was submitted to a "Motions Day" proceeding. For the

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Petitioner filed an amended petition on February 23, 2021. ECF No. 12.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$115,444.81 reflecting $113,000.00 for her actual pain and suffering plus $2,444.81 for her past unreimbursable expenses.**

## I. Relevant Procedural History

Nearly two years after this case was initiated, Respondent filed his Rule 4(c) Report conceding that Petitioner was entitled to compensation. ECF No. 25. A ruling on entitlement was subsequently issued on July 28, 2022. ECF No. 26. The parties thereafter attempted to informally resolve damages but were unsuccessful, and Petitioner filed a brief to substantiate her damages request. ECF No. 30, 31 ("Br."). Respondent reacted with a brief of his own, and then Petitioner filed her reply. ECF Nos. 32 ("Opp."), and 35 ("Resp."). The parties agreed to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. ECF. No. 37. (They agreed on the unreimbursed expenses at issue, and therefore I adopt that sum herein). That hearing was held on May 26, 2023,[4] and the case is now ripe for a determination.

## II. Relevant Medical History

A complete recitation of the facts can be found in the Petition, the Rule 4(c) Report, and in the parties' respective pre-hearing briefs.

In summary, at the time of vaccination Ms. Barry was a 41-year-old employed mother of two toddler children, with a non-contributory medical history. Exhibit (Ex.) 1 at 1; Ex. 4 at 156; Ex. 19 at 5. She received the flu vaccine in her left deltoid on October 26, 2018. Ex. 1 at 1.

On December 18, 2018, almost eight weeks after vaccination, Ms. Barry presented to an orthopedist, Dr. Garrett Lynch, with complaints of left shoulder pain. Ex. 11 at 1. She reported that her pain started on October 26, 2018, "after she got her flu shot," and that "symptoms occur constantly" and "[t]he problem is worse." *Id.* At this visit, Petitioner rated her pain at 5/10. *Id.* Petitioner received two cortisone injections at this visit, one in the subacromial space and one in the glenohumeral joint. *Id.* at 4. Petitioner was diagnosed with impingement syndrome of the left shoulder, prescribed 800 milligrams of ibuprofen, and referred for an MRI and formal physical therapy (PT). *Id.*

Also on December 18, 2018, Ms. Barry underwent an x-ray and MRI of her left shoulder. The MRI revealed: "1. Mild AC joint hypertrophy and edema in the distal clavicle probably chronic. 2. Rotator cuff shows tendinopathy supraspinatus infraspinatus tendons

---

[4] At the end of the hearing held on May 26, 2023, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing. The transcript from the hearing is fully incorporated into this Decision.

but no evidence of rotator cuff tear. Muscle edema within the anterior and posterior aspects the deltoid as well as some fluid in the subdeltoid bursa and may be related to previous injections. 4. Small amount of marrow edema noted at the teres minor insertion site along the humerus which may be related to previous injection as well." Ex. 11 at 55. The x-ray was unremarkable. *Id.* at 54.

On December 20, 2018, Ms. Barry received an initial PT evaluation and plan of care. Ex. 15 at 15. On evaluation, Petitioner displayed limited range of motion (ROM) and reported pain at 6/10 with certain activities of daily living (ADLs). Petitioner attended a total of seven (7) visits through January 29, 2019, during the first round of PT.

On January 11, 2019, Ms. Barry returned to Dr. Lynch, reporting that the cortisone injections provide some relief, but were wearing off. Ex. 11 at 6. At this visit, Petitioner rated her pain at 3/10. *Id.* Petitioner received two additional cortisone injections at this visit, one in the subacromial space and one in the bicep tendon sheath. *Id.* at 9. On February 1, 2019, Ms. Barry returned to Dr. Lynch reporting continued left shoulder pain, consistently rated at 3-6/10 depending on the activity. *Id.* at 11. The possibility of surgery was discussed, but Dr. Lynch noted that Ms. Barry had two small children and was not sure when she would be able to proceed with surgery. *Id.* No steroid injections were given at this visit. *See id.*

On February 25, 2019, Ms. Barry presented to Dr. Cyrus Lashgari for a second opinion, rating her pain at 2/10 at this visit. Ex. 8 at 14. Dr. Lashgari noted a partial rotator cuff tear. *Id.* Petitioner elected to continue conservative treatment, including PT using anti-inflammatory medication. *Id.* at 15.

Ms. Barry returned to Dr. Lynch on February 28, 2019, and scheduled her shoulder surgery. Ex. 11 at 20. On March 25, 2019, Petitioner underwent (1) left arthroscopic distal clavicle excision; (2) extensive arthroscopic debridement, large undersurface partial-thickness tear rotator cuff supraspinatus tendon; (3) limited arthroscopic debridement, type 1 SLAP lesion; and (4) arthroscopic subacromial decompression (arthroscopic acromioplasty) with coracoacromial ligament release using electrocautery. *Id.* at 70. Petitioner's post-operative diagnoses were: (1) Partial tear rotator cuff middle and anterior 1/3 supraspinatus tendon estimated to be torn approximately 50% (primarily an articular sided tear.); (2) Chronic impingement syndrome with a large subacromial spur and marked fraying of the coracoacromial ligament.; (3) Chronic left AC joint pain.; (4) Partial tear of biceps tendon, 25% torn near its insertion, stable biceps anchor. *Id.*

Ms. Barry had a post-operative PT evaluation on March 27, 2019, and PT services were recommended for her to return to premorbid functional. Ex. 19 at 5-6. She attended

a total of 17 PT sessions during the second round of therapy through June 26, 2019. *Id.* at 22.

Ms. Barry had a one-week post-operative visit with Dr. Lynch on April 1, 2019. Ex. 11 at 28. Petitioner reported that she was doing well overall, but rated her pain at 6/10 (noting pain when reaching and at night) managed with naproxen and Percocet. *Id.* Follow-up was recommended in three to four weeks. *Id.* at 32. Ms. Barry returned to Dr. Lynch on May 6, 2019, rating her pain at 2-4/10, and indicating that she was still taking non-steroidal anti-inflammatories (NSAIDs) for pain. Ex. 11 at 34, 37-38. On July 1, 2019, Ms. Barry rated her current pain at 0/10, and reported that she was doing very well, and that her maximum pain was rare, rated at 1/10. *Id.* at 39. Petitioner's ROM was noted to be normal, but still with decreased strength. By August 20, 2019, Petitioner's symptoms were still occasional with dull pain rated at 1/10, and relieved by PT. *Id.* Ms. Barry subsequently had a slip and fall on October 9, 2019. *Id.* at 48. Despite this fall, Petitioner's left shoulder exam the following day was normal. *Id.*

### III. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.*, 109 Fed. Cl. 579, 489-90 (2013). In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### IV. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and considered the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases.[6] My

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Hum. Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Hum. Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Hum. Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

determination, however, is ultimately based upon the specific circumstances of this case.

Ms. Barry requests $125,000.00 for her past pain and suffering. Br. at 26. She asserts that she has "endured considerable pain and suffering as a result of her SIRVA and subsequent medical treatment." Br. at 16. In all, formal medical treatment for her SIRVA lasted ten months, and included 24 PT sessions, four cortisone injections administered on two occasions, an arthroscopic shoulder surgery five months post-vaccination. *Id.* at 20-23. Ms. Barry detailed how her SIRVA impacted her ability to care for her then one- and three-year-old children, including loss of quality time, not being able to hold her one year old, not being able to lift them in and out of car seats or cribs, and not being able to bathe or diaper them. *Id.* at 24-25. Ms. Barry also detailed her struggles with fertility and IVF treatments, highlighting how important her children and family are to her. *Id.* at 20, n. 6.

In response, Respondent recommends a pain and suffering award of no more than $87,500.00. Opp. at 14. Petitioner's delay in seeking treatment, mild to moderate self-reported pain ratings, mild deficits of physical exams, and clinical course less than 10 months, all support a moderate award. *Id.* at 8. Respondent argues that Petitioner's voluntary delay suggests that her pain was not significant enough to prompt sooner treatment. *Id.* Respondent also asserts that Petitioner often reported mild pain levels and never reported pain at more than 6/10, she often had full ROM, experienced relief on the two occasions she had cortisone injections, and did not take prescription pain medication until after surgery. *Id.* at 9. Respondent noted that Petitioner quickly decided, after four months, to have surgery, and the surgery provided substantial and long-term relief. *Id.* at 9-10.

Pursuant to my oral ruling on May 26, 2023 (which is fully adopted herein), **I find that $113,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**

As a general matter, an award of at least $100,000.00 is not automatically appropriate in all cases where arthroscopic surgery is involved. To the contrary, other facts specific to a case can justify a lower pain and suffering award. *Shelton v. Sec'y of HHS*, No. 19-1556V, 2022 WL 2196412 (Fed. Cl. Spec. Mstr. May 6, 2022), at *1, 9. *Hunt v. Sec'y of HHS*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022), at *1, 10. However, the fact that a petitioner must undergo arthroscopic surgery to alleviate her symptoms inherently suggests a greater level of pain and suffering, and/or more intrusive treatment. In addition, Program goals are generally served by creation of a few foundational rubrics that can be considered when faced with pain and suffering disputes – a common disagreement that too often obstructs the speedy resolution of SIRVA cases. Thus, it is not unreasonable to apply a baseline six-figure "yardstick" to

SIRVA pain and suffering demands in cases involving surgery (although one that can be rebutted) – and for those reasons, the best comparables under the circumstances are cases involving surgery.

While no one specific case is completely analogous to the circumstances herein, the cases cited by both Petitioner and Respondent are all instructive. Ms. Barry looks to comparative guidance for similar SIRVA cases including *Issertell*, *Hall*, and *Moore*.[7] Br. at 20-21. In particular, Petitioner points to *Issertell* (in which $112,500.00 was awarded) as an appropriate benchmark on which to compare her case. *Id.* Ms. Issertell had an arthroscopic shoulder surgery and her treatment course included one cortisone injection, a total of 32 therapeutic visits (14 PT sessions, 12 chiropractic visits, and 6 acupuncture visits), an MRI and her injury was approximately ten months. *Issertell*, 2022 WL 2288247, at *7. Ms. Barry argues, however, that her objective treatment course was more severe than Ms. Issertell's, which supports a pain and suffering award higher than what Ms. Issertell received. Br. at 23.

Ms. Barry also considered *Hall* and *Moore* to provide appropriate guidance in this case. *See* Br. at 20-21, n. 7. In *Hall* (in which $110,000.00 was awarded), that petitioner had an arthroscopic surgery and her treatment course included one cortisone injection, 18 PT sessions, one MRI, and approximately seven months of aggressive medical care. *Hall*, 2022 WL 2196412, at *3. In *Moore* (in which $115,000.00 was awarded), that petitioner had an arthroscopic surgery, and her treatment course included one cortisone injection, 30 PT sessions, one MRI, and 15 months of documented treatment. *Moore*, 2022 WL 962524, at *2-3.

Respondent asserts that *Issertell*, *Hall*, *Moore* are distinguishable from Ms. Barry's case and do not support Petitioner's requested damages award. Opp. at 9. The claimants in those cases sought treatment much sooner than Ms. Barry (less than two weeks), and had a more severe or a longer treatment course than Ms. Barry. *Id.* at 10-12.

Instead, Respondent argues that cases like *Hunt* and *Shelton* are more analogous to this case, and further, that this case warrants an award *below* the lowest value surgical cases to date.[8] Opp. at 13. While Ms. Barry had "a few more PT sessions and one

---

[7] *Issertell v. Sec'y of HHS*, No. 20-0099V, 2022 WL 2288247 (Fed. Cl. Spec. Mstr. May 6, 2022) (awarding $112,500.00 for past pain and suffering); *Hall v. Sec'y of HHS*, No. 19-1556V, 2022 WL 2196412 (Fed. Cl. Spec. Mstr. May 6, 2022) (awarding $110,000.00 for past pain and suffering). *Moore v. Sec'y of HHS*, No. 19-1805V, 2022 WL 962524 (Fed. Cl. Spec. Mstr. Feb. 25, 2022) (awarding $115,000.00 for past pain and suffering)

[8] *Shelton v. Sec'y of HHS*, No. 19-1556V, 2022 WL 2196412 (Fed. Cl. Spec. Mstr. May 6, 2022) (awarding $97,500.00 for past pain and suffering); *Hunt v. Sec'y of HHS*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for past pain and suffering). Respondent's counsel also

additional steroid injection," the petitioner in *Hunt* had more immediate unmanageable pain, she presented for care within three weeks, she had greater tenderness, reduced ROM, and strength deficits, more significant initial pain levels, pre-operative steroid prescription medication, and a longer duration; thus, Ms. Barry's pain and suffering award should be lower than the *Hunt* petitioner. *Id.* Similarly, Respondent asserts that Ms. Barry's pain and suffering award should be lower than the petitioner in *Shelton*, because the *Shelton* petitioner's pain levels were higher, she endured more months of pain and suffering before surgery, and her surgery was more extensive. *Id.* at 13-14.

Although a surgical case, *Shelton* involves a unique set of facts and circumstances, including an initial delay of five months before any complaint of pain and an additional three-month delay before further treatment was pursued. *Shelton*, 2021 WL 2550093, at *7. Here, Ms. Barry explained that she asked around to family members if their shot has been particularly painful, and delayed treatment out of uncertainty as to the seriousness of her situation, but eventually relented as her pain was became more intense rather than going away. Br. at 16; Ex. 20 at 3. And although not documented in the record, Ms. Barry provides a very detailed and credible account of reporting her pain to a pharmacy employee who was "very dismissive." Ex. 20 at 3-4. Thus, while I take Petitioner's treatment delay into account, it is distinguishable from the five-month delay in *Shelton*.

*Hunt* was also a SIRVA case featuring surgery which resulted in pain and suffering close to, but not in excess of $100,000.00. But that petitioner's SIRVA was described as mild to moderate for the initial six weeks after vaccination, and mild thereafter. *Hunt*, 2022 WL 2826662, at *9. The *Hunt* petitioner had surgery approximately six months post-vaccination, was noted to have "benefited from significant reduction in her pain following each cortisone injection . . . resulting in periods of little-to-no pain during the course of her injury . . . ." and returned to baseline approximately fourteen months after vaccination. *Id.* at *8-9. The *Hunt* petitioner also responded very well to the corticosteroid injections, had periods of little-to-no pain, and her mostly mild treatment course only lasted about fourteen months. Thus, *Hunt* is also unique and distinguishable.

Overall, this case presents a moderate-severe SIRVA involving surgery. The *Issertell* case is the one I deem most comparable. Ms. Barry consistently experienced a moderate amount pain for the duration of her injury (rated between 3-6/10), experienced limited ROM, she attended 24 PT sessions, had four cortisone injections administered on two occasions which provided some temporary relief, an arthroscopic shoulder surgery five months post-vaccination after failing conservative treatment, and her treatment course was ten months. Although there was a minor delay in seeking treatment, Ms. Barry

---

referenced *Martin v. Sec'y of HHS*, No. 19-830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021) however, this case was not included in Respondent's brief.

also experienced an emotional component – being unable to provide certain care for her toddler children – which adds some value to her claim, slightly above the petitioner in *Issertell*.

## Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I find that $113,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[9] I also find that Petitioner is entitled to $2,444.81 in actual past unreimbursable expenses.**

Accordingly, **I award Petitioner a lump sum payment of $115,444.81 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.